M. S. ROBBINS and S. S. JACKSON, *ex parte.*

Courts *have power* in North Carolina to order counsel to pay the costs of cases in which they have been guilty of gross negligence (even of a kind not included in Rev. Code ch. 9, s. 5) such conduct being a sort of *contempt.*

Where the contempt imputed, occurred in a different Court, or at another time, and was not *in the face* of the Court which punished it,—the parties affected by the order may appeal.

Upon the facts of the case stated here, there was no *contempt* by the counsel made out.

(*Ex parte Summers,* 5 Ire. 149; *State* v. *Woodfin,* 5 Ire. 199; *State* v. *Mott,* 4 Jon. 449; *Weaver* v. *Hamilton,* 2 Jon. 343, cited and approved.)

CONTEMPT, adjudged by *Tourgee, J.,* at Fall Term 1868, of the Superior Court of RANDOLPH.

At February Term 1867, of the County Court of Randolph,. one Kendall, a processioner for the County, returned to Court a certificate stating that at the instance of the legatees of Brice Beckerdite he had commenced to procession a certain tract,. but whilst engaged in doing so had been forbidden to proceed by an agent of Patton, Woodfin & Co.

After other proceedings in the cause, not material here, at August Term 1867, a report made by the processioner was. filed and confirmed, and *the defendants* appealed to the Superior Conrt.

In the Superior Court the case was stated as *Brice Becker-- dite's heirs* v. *Patton, Woodfin & Co.*, and continued from term to term until Fall Term 1868, when upon motion of the defendants, the suit was dismissed, because there were no parties. plaintiff; and the Court further ordered that the cost be taxed against the *plaintiffs*, and in default of their being paid by them, then against the counsel for the plaintffs. Thereupon the counsel appealed from so much of the order as affected them.

*Gorrell* for the appellant.

In England an attorney is an officer of the Court, and is. therefore under the power of the Court as to his official conduct and the Courts have exercised the power of compelling them to pay costs for *gross neglect.* As for instance, where there are *several palpable mistakes* through the neglect of an attorney—or when, in a Fine one parish is inserted for another through mistake, Tidds Practice, 706; 4 Moore, 171; 16 E C. L. Rep. 373.

The Court will order an attorney to pay costs to his client for neglect; and to the opposite party for vexatious delay. Tidd's Practice, 86. It will also make them pay costs for fraudulent practice, as when an attorney knowing bail to be insufficient, puts them in, 5 Barn. & Adol. 533; 7 E. C. L. R. 181.

There is no Act of Assembly in this State, except Rev. Code ch. 9, s. 5, which provides that when a plaintiff shall be compelled to pay costs of his suit in consequence of a failure of

ROBBINS AND JACKSON, *ex parte.*

his attorney to file a declaration in proper time, he may warrant such attorney for all the costs so paid, &c.

According to the practice in England, the Court would have the power to make the attorney pay costs to his client in this case.

If therefore the Courts in this State ever had the power to make an attorney pay costs in such case, this Act of Assembly, by direct enactment takes it away in that particular case, and by implication in all cases: *expressio unius,* &c.

It does not appear that the Courts ever had the power in this State, to make attorneys pay cost—there is no case to be found where they have ever exercised such power. And in the practice of our Courts for nearly a century when so many cases would be likely to arise authorising the exercise of such a power if it existed, the *want* of a precedent is the strongest evidence that the authority never has existed.

But even if the Court had such right, the present is not a proper case for such an order. These parties have done nothing wrong—have been guilty of no gross neglect of duty, or want of skill. The proceeding commenced out of doors, and they are not responsible for it. When it comes into Court they moved for a confirmation of the report which it was their duty to do, and they would have been guilty of neglect if they had not.

The defendants' counsel was more in fault for not moving to dismiss; it was his duty to move to dismiss an anonymous case, that had neither plaintiffs nor defendants; for " Patton, Woodfin & Co.," is just as uncertain as " Brice Beckerdite's heirs. "

No counsel *contra.*

RODMAN, J. It is contended by the counsel for the appellants, who were the attorneys for those, whom, for brevity, we will call the plaintiffs, in a suit brought by " Beckerdite's heirs," *eo nomine,* against " Patton, Woodfin & Co.," *eo nomine.*

1. That the Judge had no power to make the order appealed from.

2. That if he had, the present case was not a proper one for its exercise.

As to the first point: In *Bacon's Abridgement, Article, Attorney,* II 506, it is said ·' Attorneys are officers of the Court, and are liable to be punished in a summary way, either by attachment, or having their names struck out of the roll of attorneys, for any ill practice attended with fraud or corruption, and committed against the obvious rules of justice and common honesty; but the Court will not be easily prevailed on to proceed in this manner, if it appears that the matter complained of was rather owing to neglect or accident, than design; or if the party injured has other remedy provided by Act of Parliament, or action at law."

In *Comyn's Digest, Title, Attorney,* B. 13, it is said: " An attorney being an officer of the Court, if he attempt anything which he cannot or ought not to do, it will be a contempt of the Court, for which an attachment shall go against him." And again, in the same, *Title B,* 15, note: " It is not usual for the Court to interfere in a summary way for a mere breach of promise, when there is nothing criminal. 2 *Wils.* 371, 2, nor on account of negligence or unskilfulness, *Pitt* v. *Yalden,* 4 Burr. 2060, except it be very gross, Say. Rep. 169, 4."

These authorities establish the English practice, which, indeed is not, contested. The same power has been habitually exercised by the Courts of many, if not all, of our sister States. The authorities are so numerous, that it is unnecessary to refer to any of them. In *Ex parte Summers,* 5 Ire. 149, the Court say: " There is no doubt that every Court must have power to control its officers by process of contempt, attachment, fine and commitment." " Attorneys of a Court, clerks, sheriffs and all officers having the returns of process to the Court, and the custody of prisoners on *mesne* and final process of the Court, must, of necessity, be thus amenable to the summary control and punishment of the Court." This case is supported by *State* v. *Woodfin,* 5 Ire. 199, and *State* v. *Mott,* 4 Jon. 449; and by the act of 1846, ch. 34, sec. 117 of Rev.

Code, the principles asserted in *Ex parte Summers*, are recognized, and the practice is regulated.

There can be no doubt, therefore, of the power of a Court, to punish any of its officers, including attorneys, for a contempt, in a proper case.

But it is said that there is no precedent in North Carolina, either reported or that can be recollected, of a Court compelling an attorney to pay costs, for negligence merely. That may be admitted; but the power to do this, is not a distinct power, but only a branch of the general power to punish for contempt; it is treated in all the books, in connection with the other instances, and referred to the same source. Upon the authorities cited, there can be no doubt of the practice of the English Courts to regard what is called in *Pitt* v. *Yalden*, *ubi supra*, "*lata culpa*," or "*crassa negligentia*," on the part of an attorney, as a contempt of Court; and no reason is seen, why this instance of the general power, should be denied to the Court of this State, unless it be taken away, as is argued for the appellants, by an implication from sec. 5, ch. 9, Rev. Code. This statute provides that, when a plaintiff shall be compelled to pay costs, by the neglect of his attorney to file a declaration in proper time, he may recover such costs from the attorney, by warrant. This implication does not arise; it is a well known principle, that when one remedy exists at common law, and a statute gives another, the latter is cumulative.

Before considering the second point made by appellants, it will be best to consider a point not made, but which ought to be noticed. Can the appellants appeal from the order of the Judge? In *State* v. *Mott*, 4 Jon. 449, it was held, that a party punished for a contempt in view of the Court, could not appeal. We do not mean to impugn that case in any degree; but its reasoning can have no application to a case like this, where the contempt alleged was negligence in the conduct of a cause, at a previous time and before another Court. We think in such a case the appellants were entitled to appeal, to bring up the legal question as to the power of the Court,

under the circumstances set forth.   *Weaver* v. *Hamilton*, 2. Jon., 343.

We are now prepared to consider the second point made by the appellants; and we concur with them that the facts set forth by the Judge do not make out a case of " *crassa negligentia,*" which he had the power to punish.

No fraud, or corruption, or criminal mal-practice is imputed to the appellants. It appears from the record of the case of. *Beckerdite's heirs* v. *Patton, Woodfin & Co.,* which the Judge has properly sent up with the statement made by him, in accordance with sec. 117 of ch. 34, Rev. Code, that the appellants had no connection with the commencement of that suit. It was begun by the Processioner under ch. 88, Rev. Code, as his report says, " at the instance of Beckerdite's legatees; " the defendants were not summoned at all; they voluntarily intervened by forbidding the Processioner to continue to run the lines. After the suit was constituted in Court by the return of the Processioner, the counsel moved the confirmation of his report, and the various proceedings then took place, by which the greater part of the costs are incurred. The supposed negligence consisted in permitting these proceedings in a suit so defectively constituted as to parties, and in neither amending nor dismissing it. But it was equally open to each party to amend or dismiss the proceedings. It is not sure that the appellants, who were counsel for the plaintiffs, were under any higher obligation to do either, or were more culpable for doing neither, than the counsel for the defendants were; both were *in pari delicto.* Even in the Superior Court, the defendants, on proper proof might have amended, by inserting the names of Beckerdite's heirs, and have thus have had substantial antagonists. It would seem unjust to make the counsel for the plaintiffs pay to the defendants costs which they might so easily have averted.

The order of the Judge below is reversed, but the case being *ex parte,* the appellants cannot recover any costs in this. Court.

PER CURIAM.                              Order reversed.